Good morning, and may it please the Court. My name is Sam Rosenthal. I represent the appellant, Khalid Shalhoub, in this case. This case presents two questions of exceptional importance. First of all, the extraterritorial application of the parental kidnapping statute, and second of all, whether it was a violation of due process and the District Court abused its discretion. I think it presents more questions than that, some of which precede those questions, such as whether we should dismiss this appeal because your client's a fugitive, or whether we have jurisdiction over this appeal, or whether we should treat this as a petition for writ of mandamus, in which case you would have to show that your client has established a clear and indisputable right to relief. Those are all, to me, threshold questions that you have to get over before we can even reach the ones that you've raised. And with respect to the Court's jurisdiction, we believe it squarely fits within the collateral order doctrine. There are three requirements. We think we meet all of them. First of all, there was a conclusive determination that the defendant was a fugitive. There was nothing more to be done. The Court made that determination, and that ended that matter, which was completely collateral to his guilt or innocence under the statute, and it's unreviewable. That's the import of him being characterized as a fugitive. I mean, if you've been in my job long enough, you realize that when you manage your docket, that you assign it to different kinds of dockets, depending upon what the status of the case is, and here there was an administrative determination that he was a fugitive, but it really didn't impact your client as far as his ability to travel once the red notice was issued. It impacts him in several ways, one of which is travel, just like Hijazi, decided by the Court in the Seventh Circuit found that was sufficient, but look at this very case. It impacted him in the very case. But anybody who's indicted in the United States District Court that is not in the country, that does not return to face charges that have been brought against them, if there's a red notice issued, they're always subject, and they don't have to be deemed to be a fugitive. They're subject to a red notice and interpol arresting them and telling U.S. authorities that they've been arrested. Based on the thin record in this case, and one of the things that we think should be done here is a remand so there's a fuller and more complete record, but we have to assume that the fugitive label, just like the Seventh Circuit assumed, did impact him. But it also impacts him in this case in that only because he was deemed a fugitive. How does the fugitive label impact him differently than somebody who happens to be overseas at the time that they're indicted, and the government decides to contact interpol and issue a red indictment. They've not voluntarily returned back. If they're in your country, let us know, and we'll go through the process to get them extradited if we can. Because a fugitive carries with it a connotation. It carries with it a determination that someone is evading. Someone is not simply subject to arrest, but they're doing something affirmatively to evade or obstruct proceedings. So would you be okay if the District Court said, I'm not going to call them a fugitive anymore, but there's a red notice, and if they're ever in an extradition country, that will allow them to be extradited? There is no question that the label itself carries with it a stigma. And I think that if the court were to remand, and that relief were ordered, it would be of substantial help. That's not all the relief we're asking for, but yes. Why would it be of substantial help? Because, for example, there is a statute that prohibits someone from harboring a fugitive. Are people afraid of dealing with him for fear that they, too, will be guilty of a crime? Fugitive connotes a certain punitive aspect to it. That is, somebody is doing something that's evasive or illegal. It's a determination that someone is committing a crime in and of itself. And so under the stigma plus doctrine, that's exactly what requires a hearing. And if the court were to remand and say, you can issue an arrest warrant, that would be valid, but you cannot call him a fugitive if he's not, we think that would be certainly relief that would be helpful to him. We think the court should go beyond that, however. We think that isn't the only relief. But to go back to the question of should this court hear the case, there's no way this defendant, this appellant, is able to resolve that issue unless this court rules. The government says, well, he can always come back. Well, if he comes back, he won't be determined a fugitive, and the government surely will argue that the issue is moot. If the court were not to determine if it's within a collateral order doctrine, we think mandamus is appropriate, and so did the Seventh Circuit when it decided hejazi and found that But this is a case that has kind of, hasn't hejazi different? Hejazi was a Lebanese citizen in Kuwait that had never been to the United States, that made no transactions in the United States, and had no connection to the United States. That's not the case in this case, is it? It is very close in this respect. It is true that there is some historical facts to suggest the defendant had been in the United States, but it may not be within a decade of the indictment. At some point, he was in the United States. He's never been a U.S. citizen. He's never been even a permanent resident of the United States. There's no indication within a decade of the indictment he even held property in the United States. And so, American contacts really don't matter in terms of the statutory question. But it matters… Isn't one of the principal American contacts in this case one that he took advantage of in that the reason why his child was able to go to Saudi Arabia is because a state court granted him the right to have that sort of access to their child and travel for their child. And that while in the United States, he got the direct benefit of his status in the United States as a parent to get a court to order the rights that he used in order to get his child to Saudi Arabia where it was kept. Well, we believe that contrary to the fact that he took advantage of the U.S. proceedings, he was actually the victim of those proceedings. The wife made a fraudulent application and the court found that she had engaged in fraud. Which means he got a really good relief from the state court when he enjoined that process having been in the United States enabling the conduct in which he engaged. And so, the issue is there is a custody order. We don't question that whether he got the benefit of it or the burden of it. There is no question. There is a custody order. But that really begs the question of how do we apply the statute here and whether it's extraterritorial. The extraterritorial question is did Congress expressly state that this statute when it said deprive a parent of parental rights was talking about that custody order and whether that custody order would trump the sovereign rights of a foreign nation. And that's the issue that we think is entirely appropriate for Mendemus. This case goes beyond simply the right of the prosecution or the need of the prosecution to secure a conviction or the need of the defendant to secure an acquittal or vindication. This is an important case because it determines the application of U.S. law overseas to a foreign nation. And I want to make sure the government seems to misperceive our argument. It's not that this statute has no foreign applicability. That's not our argument. Clearly it does. If the defendant engages in conduct that's in violation of U.S. law, it's a violation of foreign law, there's no question that he can be prosecuted. The narrow issue here is whether or not this statute applies when it says depriving a parent of their parental rights, quote, arising under law, Congress meant only U.S. law. And if we look at the Supreme Court's decisions in RGR Nabisco, the court was very clear. When a statute gives no clear indication of an extraterritorial application, it has none. And so what is it in this statute that said arising under law means U.S. and no other law? There's no indication whatsoever that that's what Congress said and there's no reason that therefore under RGR Nabisco and other cases that the statute should be applied extraterritorially. So this is a case that we believe not only fits within the collateral order doctrine, but mandamus is appropriate because it does involve important issues of the application of U.S. law overseas. I'd like to just one point on the two prongs of the statute. One prong is he could be prosecuted if he removed a child. I want to make sure I understand that last point. Your argument is that the International Parental Kidnapping Crime Act has no extraterritorial application? No, Your Honor. It is in a narrow sense that is no application where arising under law has U.S. law conflicting with the law of a foreign sovereign. We readily agree that a statute can have extraterritorial application in one respect and not in another. And I would invite the court's attention, for example, to the international hostage taking statute that spells out when it applies extraterritorially and when it does not. And so our argument is simply where arising under law would result in U.S. law conflicting with the law of a foreign sovereign. In that limited situation, Congress has not expressly stated, which is what it has to do in order for the statute to be applied extraterritorially. Your position is that because your client did not allow his child to return to the United States, that the law in Saudi Arabia is that he would have the right to do that even though he used a custody order for a state court to allow and put into place the travel of their child to Saudi Arabia? The question is, and when you say used the custody order, it's not at all clear that the custody order was to his liking. There's no indication in the record that it was. It might not have been to his liking, but it empowered him to take the action that he took and it would have allowed him to require that the child be allowed to travel because he went in and tried to get the travel restrictions lifted. But the same argument could be made as to the wife. The wife, as we understand it, I don't know that it's in the record, converted to the husband's religion, which she agreed to the paternal rights. And so she took advantage of that. The same argument could be made. The issue, though, is not on the particular facts whether or not the defendant was favorably treated by that custody or not favorably treated. The issue is whether Congress has affirmatively spoken and indicated that in that situation that custody order should trump the law of a foreign sovereign and absent some express statement by Congress that that's what it intended. When I listen to this argument, though, see, it reminds me of the jurisdictional problems with this appeal. In the criminal context, the Supreme Court has said that the collateral order doctrine would apply to those kinds of issues where the defendant has a right not to be tried such like, for example, double jeopardy. The argument you're making just doesn't sound like that. Nor does it sound like the kind where we could say there's a clear and indisputable right to relief that would warrant mandamus. Well, on the collateral order doctrine, we think it most clearly fits when you talk about the stigma plus test and his being declared a fugitive. That's completely collateral. There's no question about it. It's stigmatizing. There's no question that he wasn't given any hearing whatsoever. And so even if the court determines that the extraterritorial application doesn't fit within the collateral order doctrine, clearly the fugitive labeling does. But we would point out that with respect to the statutory interpretation, even if you determine it's not collateral order, we would urge the court to consider mandamus based on the exact same reasoning as Hijazi. And I see my time is up. Thank you. You've saved three minutes for rebuttal, Ms. Reid. Thank you. Good morning, Your Honor. May it please the court, Lisette Reid for the United States. And I have with me at counsel's table, Ann McNamara, who handled this case in the district court. As far as I think we should start with the issue is whether or not this case is even appropriate before this court. The order of the district court was not a final and appealable order. As Your Honor pointed out, there are only three instances in which the Supreme Court has determined that an interlocutory order should be considered by this court. And those are an order denying a motion to reduce bail, an order denying a motion to dismiss for double jeopardy reasons, and an order denying a motion to dismiss on the speech and debate clause. So what the appellant is trying to do here is add a fourth reason, and the situation simply does not require it. The arguments he is raising do not pass the collateral exception test because the arguments go right to the merits of the action. He's arguing the jurisdiction, the extraterritorial jurisdiction of the statute, Sixth Amendment, speedy trial issues, venue, all of this goes directly to the issues that should be tried on trial. As far as his fugitive status, I think Your Honor pointed out, Judge Duffy, that the fugitive status simply means that a grand jury has found probable cause to believe that Mr. Schellhoog has violated the statute. And that's all it does. He has the opportunity to come to return to this country where he has a number of ties. He lived here. He married here. He was divorced here. And he used the Miami-Dade County Divorce Decree to get permission to remove the child from the country. So he has an obligation to return, and he's failed to do so. That last issue, I need some clarification. The government made a statement in their response to Mr. Schellhoog's motion or brief that, quote, Schellhoog took his daughter to Saudi Arabia on a flight originating within the state of Florida without informing Ms. Hernandez of his travel itinerary in advance in violation of Ms. Hernandez's parental rights. I'm unclear, because I think they've taken different positions of how the child got to Saudi Arabia. This would suggest that they got on an airplane together, if it doesn't say that. It doesn't say that. At this point, the evidence that I have, what I have is the indictment, Your Honor. And using the indictment, which says that he took the child and retained the child, those are the prongs of the statute. I simply made a statement based on what's in the indictment and what the grand jury found probable cause. All right. Thank you. As far as the issue of the writ of mandamus, I think it's clear that, well, it's established there's no clear and indisputable right here. This case is very different from Hejazi. Hejazi, the defendant had only one contact with the, had only been to the United States once, and it had nothing to do with this case that he had actually been indicted on. In our situation, it's clear that the contacts all have to do with this case. And the extraterritorial argument that Shalhoub made is the same argument that the defendant made in the Second Circuit in Amir. So for a discussion of that argument, you can look to Amir, and the court, the Second Circuit in Amir, made it clear that the International Parental Kidnapping Act, its purpose is not to determine whether the law of one country is right or another. It's simply to put the parties back in the state that they were in and the position that they were in by the custody order, whether that custody order came from this court or court in a foreign jurisdiction. It's not to determine foreign law. The consequences, if this court would grant the mandamus or allow this particular defendant in a parental kidnapping case to appear by counsel, are serious in that it would carve a hole in the international parental kidnapping crime that would allow the kidnapping parent to stay in a foreign country and, from afar, litigate the issues surrounding his case. Well, I think in this case, it's a little more nuanced than that. It is that if you happen to be in a country that does not have an extradition treaty with the United States, you could have a lawyer come in and represent them in a case without their appearance. But if you're in an extradition country, then the United States could bring you back and make you account for and allow you whatever benefits you would have in motions to try to avoid the legitimacy of the indictment. Isn't that true? That is exactly true, which isn't even a more serious situation because the United States would have no way of actually bringing the defendant to justice. I would ask that this court, if there's no further questions, I would ask that this court dismiss the appeal and deny the writ of mandamus. Thank you. Thank you, Ms. Reed. Ms. Grosenthal, you have three minutes. The government's position is that he's a fugitive simply because he was indicted by a grand jury and he didn't appear in court. That ruling, if that were the law of this case, would violate the Supreme Court's ruling that a defendant has no obligation to bring himself to trial. How would it be consistent with that holding to say that we can nevertheless coerce you to come to trial because we'll label you as a fugitive, we will disenable you from making any motions in court, we will make sure that you're arrested if you travel, and we will, by labeling you a fugitive, have other disenabling factors. The Supreme Court's— Everybody who travels in an Interpol country, whether or not you're a fugitive or not a fugitive, is subject to being detained in extradition proceedings enacted by the United States to bring them to the United States. It happens all the time. And if it were only the travel, it might be a different situation, but it's the travel plus. It's the travel plus the stigma of being called a fugitive, which has certain punitive connotations. It suggests that someone has committed a crime of evading or obstructing, which is a crime under federal law. Why is he not a constructive fugitive? I mean, there's a constructive fugitive doctrine. Absolutely. And that was the holding of the district court. The district court did not find he was a fugitive. The district court said he was a constructive fugitive and cited two cases, the Barnett case and the Schuster case. The effect is the same. Well, but the factual basis for it is much different and really shows why this is not a constructive or a fugitive. In Barnett and Schuster, in both cases, they had been in the country and had left immediately prior to the indictment. They had been living in the country immediately prior to the indictment. In Barnett, they had removed assets in order to frustrate a decision. Here, the defendant... There's also a case that says that if you happen to be out of the country when you're engage in effort in order to hide yourself overseas, that you can be constructively a fugitive, although not deemed to be a fugitive at the time of the indictment. And where is the evidence here that the defendant has done anything to hide himself overseas? No, because he has the benefit of a state that protects him against extradition. And therefore, you would enact a totally different standard if you're in an extradition country or a non-extradition country. But the label has to relate to the defendant's conduct. And wherever he may be found, you've got to look at his conduct. He's done nothing constructive or express to make himself a fugitive. All he's done is sit in his living room watching television. Because he knows that he can't be brought to the United States because he has the benefit of being in that particular country. And it may well be that he could be determined someone who has not agreed to come to this country, but that's different than being a fugitive, which is a label which is stigmatizing without any question. I mean, it's pretty clear that he's agreed not to come to this country because we're here. And if the Supreme Court had not held that that was his constitutional right, it would be different. But the Supreme Court has held all he's doing is exercising his constitutional rights. How can that be warranting a stigma? If all he's doing is exercising his constitutional right not to come to trial, that can't be something that warrants a violation of his right to present arguments. Thank you, Mr. Rosenthal. Thank you.